Good afternoon, everyone. We are here for Carrera v. Bayer. Good afternoon, Your Honors. May it please the Court, my name is Rebecca Bacon. I represent the appellant, Bayer. I would like to reserve three minutes for rebuttal. Very good. Under hydrogen peroxide, Mr. Carrera had to prove each of the charges by a preponderance of the evidence. And as this Court stated in Marcus v. BMW of North America, ascertainability is one of those requirements. Now, does this come under the term definition or is it a separate issue or a separate requirement other than definition? Ascertainability, well, first I would state at the outset that the parties don't have any disagreement about where to put ascertainability. This Court in Marcus talked about it as an implicit requirement, as a prerequisite, so it didn't talk about it as within predominance or within but more. No, but I meant within defining the plaintiff has to define the class. Correct, correct. And so is this part of that definition, class definition? Here the problem is ascertainability can relate to two things. One, a problem of definition where the definition is subjective. We would say that this is not a problem of the definition per se, other than, as the Court found, I believe in Xavier v. Philip Morris, you can have an objective class. They're the class definition. Sure, sure. But this is a very unusual form of action that derives its essence, its sole origin, from Rule 23. So where do we find ascertainability in Rule 23? As I understand your question, don't we really find it, even though it's not explicit, out of the dictates of the rule on definition? And that would be 23c1b. Yes, it is under definition. My only point is that it doesn't have the definitional problem of it being a subjective problem here, but it's definitional in that we have a problem that nobody can, Bayer can't determine who is within the class, and that's why it's a problem. So we've got notice issues, we've got who's bound by it, we have claim preclusion. Correct. Maybe issue preclusion issue. Okay. Correct. And Bayer's due process writes to contest individuals who come forward. Plaintiffs claim that this is a small- That's an alternative argument here, isn't it? Your due process argument. It's one of the arguments. Yeah, but we've got a text under a rule. Those are the questions we have. And in fact, under constitutional avoidance, shouldn't we not even touch that issue unless we can't determine the resolution of this case from the text of the rule? Well, from the text of the rule, yes, the class has to be defined. And here, the class is not defined in such a way that Bayer knows who the individuals are or that even the plaintiffs themselves might know who- When do you know who the individuals are? You don't have to know who the individuals are at the time of class certification. No, you do not. You only have to define the class. Correct. But at the time of class cert, plaintiff has to prove by preponderance of the evidence that there is some way to determine eventually who the individuals are. So you don't have to say it's Mr. X, Mr. Y, but you have to find- you have to have some showing of proof that shows you can. But what's really wrong with the way that this case is decided? I mean, it's not like Marcus- well, forget Marcus. This is a small purchase. It's a small item. You're unlikely, after all that time, to keep a receipt for something like that. What's wrong with the way this was handled? And if we don't affirm it, can you ever have a class action suit involving such a small purchase? Two parts to the answer to that question. One, there's no jurisprudence in this circuit that holds that just because something is a small dollar amount that therefore you're absolved of the requirements of Rule 23. And in fact, Newton v. Merrill Lynch- Has any appellate court held to the contrary? Not to my knowledge, Your Honor. And in fact, so in Newton v. Merrill Lynch, this court said, again looking at superiority, but that you are not absolved of the requirements of Rule 23 just because the dollar amount per individual might be low. So under the jurisprudence, there is no support for it. But also, this case, there may be other cases where proof was brought. I can tell you in 30 seconds the proof here. The proof here was Mr. Carrera's testimony, which was unreliable, an FTC settlement in a different case involving a different product, and then also the claim that there could be online records when there wasn't a single record produced that had the word Wait Smart. Do both sides agree that there are no records available from CVS or from the online? The plaintiffs state that CV- CVS sold Wait Smart, and then they cite to this FTC settlement with CVS. Now one thing about that, the CVS settlement was for a product that CVS made. It was a CVS brand. There isn't a single record from CVS in this case showing that Wait Smart could be identified in their records. So there may be other cases. Did the class representative testify with reasonable probability that, in fact, what he had purchased was that product or some other possible product of theirs based on the packaging? No, he did not testify with anything close to reasonable certainty that he purchased Wait Smart. Are there adequacy problems here? We would argue that there are adequacy problems. I don't know that you argued that, but I have a vague recollection that somewhere in the amicus brief here, toward the end of it, they raised Right. That was not the issue that we raised on appeal. We raised the ascertainability issue as an issue that's novel and right for this court. Below, we did argue that there was an adequacy problem. As the plaintiff stated that he purchased Wait Smart in a pumpkin-y package. It was never manufactured or marketed in an orange package. He testified. I admit it's a curiosity to me why, if there's so many people out there who purchased this product, we would have, as a class representative, someone who had such a slim knowledge of the product and such questionable association with it. That's why it comes back again to the evidentiary one under hydrogen peroxide, which is, in this case, they did not prove, the plaintiffs did not prove, by preponderance of the evidence, that in this case affidavits are reliable or, in this case, you can bypass Behr's rights because it's a small-dollar claim. I would note that they had a different plaintiff, Diane Gray, who dropped out as soon as she found out that her deposition was going to be taken. There is a problem with the class representatives in this case. This is the fifth. There was, in the Eastern District of Arkansas, the judge already in Thompson v. Behr, denied class cert in that case, noting, as part of the ruling, noting the ascertainability problems. And I would note that the district court, in looking at the cases that the district court cited, the district court cited to an 11th Circuit case, Clay v. Humana, which is not binding on this court in terms of Rule 23 jurisprudence, and then also for the statute of limitations argument, he cited to In re Liner Board, but a quote from a first district case from Waste Management. So there are a number of problems, both in terms of evidentiary and how the court looked at that evidence. Clay v. Humana seems to disregard the manageability issue and the trial plan and how this case will be tried. Exactly. That's what we would argue. And in addition, it's before hydrogen peroxide. But let me ask you this. As I understand it, even though there's no evidence in this record, I assume that your opponent is going to say, if we can't win on an affirmance, we want to remand. And I think they've said somewhere that Bayer has records somewhere that they know how many units of Waste Smart were purchased in Florida or other information. Is that accurate? Yeah. Does Bayer have such records? We have records from 2006 and 2007, I believe. And again, this product was stopped marketing in January of 2007. After that, Bayer marketed Waste Smart Advanced, which is not at issue in this case because it didn't contain green tape. But to answer Judge Sirica's question, there are records, right? And I think it was something in the neighborhood of $4 million worth of product? Yes, there are records. But again, even if you can say, okay, we sold this much in Florida, we don't know who to give that to. So if you have a million people that come forth with affidavits or fact sheets, we have no idea how to say, yes, you did take it, no, you didn't. Is that a certification issue now? It is a certification issue. Isn't there a conflation here between what needs to be demonstrated at the point of certification and what needs to be demonstrated to the claims administrator downstream? No, and those two things are conflated by plaintiffs by bringing forth the late disclosed expert, Mr. Prutsman. Mr. Prutsman deals with claims post-certification, post-settlement. Based on his experience. Based on his experience, but he's not the gatekeeper for Rule 23 like the district court and this court. And that is the problem with relying on a claims administrator who has also a financial interest in this case. I would also say that this ascertainability goes to the requirements of Rule 23. And under hydrogen peroxide, they can't give you assurances that later down the road we'll figure it out. That's been deemed to be insufficient, and that's the language of Rule 23. I would also note this court's discussion in Marcus v. BMW talking about reliable and administratively feasible means to identify the class members. And nothing in the record shows you anything that's either reliable or administratively feasible, and therefore bears left with having to conduct hearings or depositions which would destroy all of the efficiencies of Rule 23. Any other questions? Good. We've got a minute and a half left. We'll add it on to your rebuttal. Thank you very much, Your Honor. Thank you, Ms. Bacon. Mr. Watley, good afternoon. Good afternoon, Your Honor. May it please the court. I'm Joe Watley on behalf of the Appellees. The question here, of course, is has the appellate demonstrated that the district court abused its discretion in certifying a class that consists of a single state under a single state's law? And before getting to ascertainability, which is the issue that has been raised in this appeal, I'd like to put it in context a little bit, if I could. First, the state law, and this is what the district court talked about, is the Florida Deceptive Trade Practices Act, which does not require a showing of reliance. So the individualized questions like those addressed in the Arkansas opinion are irrelevant. And you know that not only from the Florida Intermediate Court opinions, but you also know it from the Eleventh Circuit's Fitzpatrick decision. In order for you to rule in favor of the appellants here, you have to determine that the Eleventh Circuit was wrong in Fitzpatrick and create a circuit split. The Eleventh Circuit, of course, the circuit that's over the state of Florida and regularly interpreting the Florida law. The second thing is that based on the facts that are alleged here, they violated the act. That can't be raised in this appeal. So now you get down to how are we going to prove damages? I think one of you asked that question. Well, if you look in the record at pages 2293 through 97, we talk about that exactly. We say under these circumstances the plaintiff class is entitled to a full refund. If that's true, it's $14,370,444.42. They say, by contrast, and they argued this when they won in a discovery dispute, not to have to produce discovery, that they should get some credit and there should be a price premium. And you compare the price of this product, the Weight Smart product, which they say is so wonderful and does these wonderful things, with the one-a-day brand vitamins. And if you do that, if you follow the methodology that they argued to the court, then the damages in Florida are $8,548,005.20. We submitted that in the record. That's presented, and those would be the damages. Now, the class definition here is a definition of all persons who purchase this product, the multivitamin called One-A-Day Weight Smart, in the state of Florida. That's simple. We've stipulated with them to a notice program that is a publication notice, and people will get that. Now, is everybody's memory perfect on whether they bought this product or not? No. We disagree with what they said about the named plaintiff. The named plaintiff did testify that he bought the product. He also testified that he bought the subsequent product that came out that was Weight Smart, something of an elder name. Was he able to tell the difference when he was deposed between those two products? He did not testify to the difference about them, Your Honor. I don't think he was clearly asked about the differences, but I don't think any of that matters in this appeal. That's not the issue that's been raised in this appeal. They haven't come in and said the findings of adequacy are clearly erroneous that the district court made. They haven't even argued that, so it's irrelevant. I pointed that out myself, but as I said, it was raised by the amicus in their brief. It was raised by the amicus in their brief, but I don't think amicus can create new issues on an appeal. I think every appellate court has addressed that issue. Now, your adversary seems to really beat the drum hard on the fact that there's – well, I mean, let me ask you straight out. Why do you believe that the loyalty rewards programs maintain records that will help you ascertain folks who purchased it? I mean, they point out there's really nothing in the record about that. It's something of a fishing expedition, according to them. Well, number one, Your Honor, according to the FTC, CVS does maintain records of purchases, and anybody that goes into CVS and has a CVS card, they keep a record of their purchases. Is this based on an FTC case? It's based on the – for purposes of this, it's based on the FTC, but for reasons that were discussed, especially in, I think, Judge Smith's questions, it's really a red herring in this appeal because it really doesn't matter at this point in the case whether you can identify specific class members. And why doesn't it matter? I've just gone through the damages. And if the jury in the end says, yes, there's liability, and the jury in the end says, yes, there's damages, either under our theory of the $14 million or under their theory of the $8 million, then that's the damages. And that's all the damages that Bayer will pay. And if 100 people show up to file claims, then those 100 people will get the money under the description. If 100,000 show up and it's oversubscribed, then you get into the things that Mr. Pressman said, how you eliminate duplicative claims and fraudulent claims. But if they are right and only 100 people show up, then what you've got left is you've got a lot of money left over. And what happens? It's the same thing that happened in Allapattah. It goes under the Uniform Unclaimed Property Act. It goes to the State of Florida Unclaimed Property Administrator. And Florida has its own procedure. Every state does. So that if somebody remembers later, hey, I bought Wait Smart and I can recover that, they then file a claim with the Unclaimed Property Administrator and they get their money. How are people identified? They're identified just like they are in every post-settlement or post-determination claims procedure. They file a claim. The claims are analyzed in the way that Mr. Pressman said they are. Duplicate claims are eliminated. Fraudulent claims are eliminated. And people are paid their money. And if there's money left over, the law takes care of how it's handled. And that's it. Bayer doesn't have any interest in that procedure. They don't pay any extra money as a result of that procedure. They are over and done. Now, where does ascertainability come in to all this? And, of course, the people are ascertained as they file their claims at the end. And the cases only say they have to be ascertained at some point, not before certification. What will be your proof at trial? Our proof at trial, Your Honor, will be exactly what we said. The class representative will testify. Their marketing will come in. The jury will determine whether they violated the Florida law. Since the Florida law specifically does not require individual reliance, we don't have to come in with individual testimony from individual class members. That's well established both in Florida and by the Eleventh Circuit and Fitzpatrick. And we present the amount of damages that have been discussed, including under the methodology they presented. They don't need to present proof that they purchased? At trial, no, sir. At trial. At trial, they do not. To ultimately recover, they will have to come in and submit proof. What if this were an individual case? If an individual case, you would have exactly the plaintiff would come forward as the class rep will and testify, yes, I purchased. He will have to testify that. If they convince the jury the plaintiff didn't purchase, obviously the plaintiff won't recover. It's really that simple. And if there were 100 individuals that joined, would each one of the 100 have to come in and testify? Not under the Florida statute, Your Honor, because there's no requirement of showing individual reliance by name. I'm not talking about reliance. I thought you said all you have to do is, don't you have to prove that you actually purchased? We would have to show purchases. Whether we would have to do that by individual testimony or not is another question. We might do it another way. Isn't that the question? Well, Your Honor, no, it's not the question because we know from the records they've produced, we know that Bayer in Florida sold $14 million and changed, the number I gave you, that amount of this product in Florida. We know that. We know that if you compare the price to one a day vitamins, then you come up with the $8 million excess figure that we talked about. We know that. And so if that is the meth, if there is liability, and if that is the damages that the jury accepts, you don't have to show any more than that in terms of the amount that's due to the certified class. Then the next question down the road is the allocation question, and that's where Pruittsman's evidence gets to it. So that's what you've got. In terms of, and let's see. What about unnamed class members? What will be their position? Assuming, let's say someone was injured or had suffered a physical injury because of ingesting this, would they be bound by the class? Well, Your Honor, first of all, there's no allegation that that has happened. I think that… I'm just trying to think about somebody who may have made a purchase, suffered a personal injury, and they would be a class member. They would be a class member. If you think you should send this back to clearly define what the claims are that are being certified, I think you can, but I think it is very obvious that the claim that is certified is the claim that's said in the second paragraph of the certification order under the Florida Deceptive and Unfair Trade Practices Act. Those are not personal injury claims. The claim that is then released is anybody that bought this product in Florida, if later on they come back and seek to bring a claim for the purchase of this product under that act, it is barred if they did not doubt of this class, just like the standards that are set out in that paragraph in Marcus that you're concerned with in what the class definition says. This class definition is objective. It does define it. You've never said, and no appellate court has ever said, that a class, you have to have objective documentation for a class. You have the standard in there that's read into it. Remember, ascertainability is nowhere in the text of Rule 23, but what's read into it is the definition has to be a definition that's subjective and understandable, and this meets that. The main case that talks about that, I think, is the Second Circuit's IPO decision where the class was one where people who paid undisclosed commissions. Well, that doesn't help you if you define a class of people that paid undisclosed commissions because if they're undisclosed, they don't know it. Here, I mean, of course people's memories aren't going to be perfect, but people know if they bought this product or not, and if they did, they can file a claim and recover if plaintiffs are successful, and if they did, they're bound by the judgment if they don't opt out. All the standards of Marcus are satisfied. So is there any way to contest the proof of claim? Well, Your Honor, the proof of claim will be tested, but remember when you get to that point... How? The proofs of claim will be tested in the way that Mr. Putzman described that they are in proofs of claims to make sure that they're not duplicates. But remember also, this is not a case like Marcus where if there is an additional claimant who falls within the class, the defendant then owes more money. This is a case where the amount that the defendant owes would already be determined, and they wouldn't pay any extra money. It is still a case, however, where the issue, one of the issues that you did have in Marcus is demonstrating that indeed the person making the claim indeed purchased the product. Well, Your Honor... Isn't that correct? That was an issue in Marcus, and it was relevant... Let me try a third time. Am I correct? That was correct in Marcus. Yes, sir. I'm sorry. I thought I'd said it, and I was trying to then explain it after I meant to answer your question specifically. The reason it was an issue in Marcus is that neither the plaintiffs there nor the defendants could say what was the extent of the sales of the cars with the tires that would never go flat. The defendant didn't know, the plaintiff didn't know, and that point was made, quoting from the oral argument in Marcus, so that if the plaintiffs come forward with one more, it's not like this where they could come before you or the trial court and say these are the damages, and this is the amount of money that's due. It would mean if one more class member came forward, there would be more damages from that class member, and in that case, a significant amount. But that's a different issue from what at least I think Judge Smith has. Well, I think it's the same issue in terms of whether the defendant has an interest in this argument. I think it is an answer to that question. In terms of the other question, whether there's an adequate procedure to identify class members, at the end of the case, whether any class members were left out or people were put in, maybe reducing the total amount of recovery if that were to happen, that's many bridges down the river. We haven't gotten that. We don't have that procedure established yet. You don't have a determination by the trial court to determine whether that was an abuse of discretion or not. So it is your position that these claims processing techniques are used in litigation classes to determine? Your Honor, there are very few litigation classes where there are claims processing techniques, number one. Have there been any? I understand that in the settlement class because the defendant has said, okay, we're liable or we're going to pay up. And these techniques can be helpful to try to figure out, to do some good rough justice to figure out who's entitled and who isn't. But we're in a litigation class now. Yes, sir. The case I would cite to you is the Allapattah decision, and my time's up, is it? No, your Honor. It's the Allapattah decision. We cite it near the end of our brief. It is a case where there was a class determination and there were claims procedures later. There were extensive recoveries by the unclaimed property, administrators of numerous states, and the procedure happened much the same as I'm describing. There's a specific decision in that about how the fact that Exxon, once its total liability was determined, really didn't have a dog in the hunt in terms of what the recovery was or was not from individual class members. That was a separate procedure. There have also been procedures following Title VII employment discrimination cases at that point in those days called Stage II proceedings. There's been a host of different ways that those have been handled. Post-Dukes, have there been cases? There have not been any, to my knowledge, post-Dukes. All of them that I'm aware of are pre-Dukes. I don't think that the issue you're raising is really post or pre-Dukes. It's what the procedure is once there's a determination for the ultimate settlement. Well, Dukes had a lot to do with procedures post-certification. Well, I don't think that's relevant to this case. I'd love to have that discussion with you over a drink sometime, but I don't think it's relevant. I hope that invitation was not directed only to Judge Sirek. No, Your Honor. No, absolutely. It was to all three of you and to my worthy opponent. Every lawyer and judge in the country has a different interpretation of Dukes. Absolutely. Well, I see my time's up. If the Court has other questions. Mr. Wiley, thank you very much. Thank you very much, Your Honor. Go ahead, Ms. Bacon. Okay. Your Honors, if I may, I would first like to address Fitzpatrick. Mr. Wiley stated that if you reverse the certification in this case, that you would then create a circuit split with the Eleventh Circuit because of Fitzpatrick. That's just not the case. Fitzpatrick didn't deal with ascertainability. Fitzpatrick dealt with whether or not FDUPA had a reliance requirement, and in that case, again, it is pre-Dukes and pre-Comcast. In that case, that court, again, relied on Clay versus Humana, and we would say that Fitzpatrick is an opposite when it comes to the question before this court as to whether or not the plaintiff has to prove by preponderance of the evidence that the class is identifiable. Mr. Wiley said that they know if they bought the product or not. That is just, again, not the case. Mr. Carrera didn't know whether he bought the product. In fact, I will respectfully correct Mr. Wiley, but at page 2854 of the appendix, Mr. Carrera said that he did not take Wait Smart Advanced, but when asked whether Wait Smart Advanced, which was the next iteration of this vitamin, whether it was in the case, he said he didn't know. And so we would be facing a problem not only of whether people remembered vitamins they purchased and took between 2004 and 2008, because we have a statute of limitation problem, but also whether or not they took Wait Smart Advanced or healthy metabolism. And if you look at 1185 and 1188 of the appendix, you see pictures of those vitamins, and they all look very similar. And the court in In Re PPA and the court in Perez v. Metabolife both showed the problems with different formulations and when you have knockoff brands, which is the problem in this case. One other point relating to Mr. Wiley and the plaintiff's claim that, well, you can prove, and we disagree with their proof on damages, but that is not something before this court, but if you can prove that Bayer sold $8 million worth of Wait Smart in Florida, therefore there is no problem for Bayer or for the plaintiffs. But you do have a problem, because if you have a million people show up, how do you determine whose claims are valid? And then you have a problem of class members who might have valid claims, and there's no way to determine. And again, there is nothing in the record to show that claims processing, such as the type used by Mr. Putzman, are reliable. If after a deposition, a seven-hour deposition, in which Mr. Carrera was given every opportunity to tell us everything he could tell us about the purchases, if after that it wasn't reliable, how are we supposed to rely or unnamed class members supposed to rely on uncontested affidavits, such as those used by Mr. Putzman? And he didn't indicate the type of fraud prevention mechanisms he would use that could do better than a seven-hour deposition, such as the one that Mr. Carrera underwent. We would also argue that in this case, what plaintiffs are trying to do is, again, to have you certify a class and then just figure out how trial will be managed later, and that goes against the findings in this court's rulings in hydrogen peroxide and Marcus. What is your response to the Alipada example? Respectfully, actually, my response is just that there is other case law that goes the other way, that there is nothing in this court that says that based on the plaintiff's say-so, you can just certify a class and that the class is ascertainable. And there is no evidence here, even by Mr. Putzman. Again, we would say that it is an error of law that the district court relied on Mr. Putzman, because under Rule 37c1, he was late disclosed. They disclosed him first in their reply brief when they addressed ascertainability for the first time in response to our arguments, and so there isn't any evidence here that those claim forms and claim procedures might be reliable. Maybe in another case there is some indicia of reliability, but here there is no indicia of reliability. Thank you very much. The case was very well argued, and we will take the matter under advice.